OPINION
{¶ 1} Appellant West American Insurance Group appeals the August 6, 2004, and September 27, 2004, decisions of the Licking County Court of Common Pleas granting summary judgment in favor of Appellees.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} Appellant, West American Insurance Group (West American), was the insurer of Heath Restaurant Corp. d.b.a. Indian Mound Smorgasbord (Indian Mound). In July and August, 2000, eggs were delivered to Indian Mound by Appellee Spring Poultry. Spring Poultry had purchased said eggs from Appellee Weaver Brothers which had purchased the eggs from Appellee Hemmelgarn Sons, Inc., who had purchased the eggs from Appellee William R. Siefring, an individual sole proprietor doing business as S R Eggs, which was under contract with Appellee Ft. Recovery Equity, Inc. to produce the eggs.
{¶ 3} The purchased eggs were used as an ingredient in ice cream prepared by Indian Mound, said ice cream recipe calling for eighteen eggs. None of the ingredients, including the eggs, were cooked prior to serving the ice cream. The ice cream was consumed by Indian Mound's guests, some of whom became ill as a result of salmonella bacteria allegedly being present in the eggs.
{¶ 4} An investigation was conducted by the Licking County Health Department (LCDH) following the outbreak. LCDH determined that the most likely source of the salmonella poisoning was raw eggs used in preparation of soft-serve ice cream. As part of its investigation, LCDH learned that Indian Mound personnel had not pasteurized the raw eggs in violation of R.C. § 917.10.
{¶ 5} The Ohio Department of Agriculture (ODA) also investigated this matter. The first investigation was conducted by the ODA Division of Food Safety which included basic facts as to the production, handling and sale of the eggs. This investigation determined that Siefring produced the eggs at his facility, sold them to Ft. Recovery which sold them to Hemmelgarn which sold them to Weaver Brothers which sold them to Springfield Poultry which sold them to Indian Mound.
{¶ 6} The second investigation was done by ODA Division of Animal Health which inspected the Siefring laying barns and determined that salmonella bacteria was present in three of the six laying barns.
{¶ 7} As a result of the salmonella poisoning experienced by the Indian Mound patrons, West American paid 73 claims totaling $239,561.00.
{¶ 8} West American filed a Complaint in the Licking County Court of Common Pleas seeking contribution under R.C. § 2307.31 from the producers and sellers of the eggs as joint tortfeasors.
{¶ 9} Motions for summary judgment were filed by Appellees Springfield Poultry, Weaver Brothers, Ft. Recovery Equity and Siefring. Appellee Hemmelgarn did not file a motion for summary judgment.
{¶ 10} Appellant West American filed motions in opposition to the various motions for summary judgment but failed to specifically oppose the motion for summary judgment of Appellee Siefring.
{¶ 11} Directing the trial court's attention to the lack of opposition to its motion, Appellee Siefring forwarded a proposed "default" summary judgment entry to the trial court requesting same be signed and filed. The trial court filed said Entry on August 3, 2004.
{¶ 12} Appellant filed a motion to set aside this default summary judgment but same has not been ruled upon.
{¶ 13} On September 23, 2004, the trial court granted the motions for summary judgment of Appellees Springfield Poultry, Weaver Brothers, Ft. Recovery and Siefring.
{¶ 14} It is from these decisions Appellant now appeals, assigning the following sole error for review:
 ASSIGNMENT OF ERROR
{¶ 15} "I. The trial court erred in granting summary judgment in favor of Springfield Poultry, Weaver Brothers, Ft. Recovery Equity and Siefret [sic]."
 I.
{¶ 16} In its sole assignment of error, Appellant contends the trial court erred in granting summary judgment in favor of Appellees. We disagree.
{¶ 17} "Summary Judgment Standard"
{¶ 18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:
{¶ 19} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
{¶ 20} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
{¶ 21} It is based upon this standard that we review appellant's assignments of error.
{¶ 22} As stated above, Appellant argues that it is entitled to contribution under R.C. § 2307.31, now codified as R.C. § 2307.25, which states in relevant part:
{¶ 23} "Right of contribution; settlements; subrogation; indemnity
{¶ 24} "(A) Except as otherwise provided in sections 2307.25 to 2307.28
of the Revised Code, if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor may be compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability. There is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established.
{¶ 25} "(B) A tortfeasor who enters into a settlement with a claimant is not entitled to contribution from another tortfeasor whose liability for the injury or loss to person or property or the wrongful death is not extinguished by the settlement, or in respect to any amount paid in a settlement that is in excess of what is reasonable.
{¶ 26} "(C) A liability insurer that by payment has discharged in full or in part the liability of a tortfeasor and has discharged in full by the payment its obligation as insurer is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's proportionate share of the common liability. This division does not limit or impair any right of subrogation arising from any other relationship.
{¶ 27} "(D) This section does not impair any right of indemnity under existing law. If one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of the indemnity obligation.
{¶ 28} * * *
{¶ 29} "(F) The proportionate shares of tortfeasors in the common liability shall be based upon their relative degrees of legal responsibility. If equity requires the collective liability of some as a group, the group shall constitute a single share, and principles of equity applicable to contribution generally shall apply.
{¶ 30} "(G) Whether or not judgment has been entered in an action against two or more tortfeasors for the same injury or loss to person or property or for the same wrongful death, contribution may be enforced by separate action.
{¶ 31} Appellant argues that Appellees sold it adulterated food, i.e. eggs containing salmonella bacteria, which it then used to make another adulterated food, i.e. the soft-serve ice cream, thereby making them joint tortfeasors. The sale of adulterated food is prohibited by R.C. §3715.52, which states in relevant part:
{¶ 32} "R.C. § 3715.52 Prohibitions
{¶ 33} "(A) The following acts and causing them are prohibited:
{¶ 34} "(1) The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded;
{¶ 35} "(2) The adulteration or misbranding of any food, drug, device, or cosmetic;"
{¶ 36} The Revised Code defines "adulterated food" as follows:
{¶ 37} "R.C. § 3715.59 Adulterated food
{¶ 38} "Food is adulterated within the meaning of sections 3715.01,3715.02, 3715.022, and 3715.52 to 3715.72 of the Revised Code, if any of the following apply:
{¶ 39} "(A) It bears or contains any poisonous or deleterious substance that may render it injurious to health; but in case the substance is not an added substance, the food shall not be considered adulterated if the quantity of the substance in the food does not ordinarily render it injurious to health.
{¶ 40} "(B) It bears or contains any added poisonous or added deleterious substance that is unsafe within the meaning of section 3715.62
of the Revised Code.
{¶ 41} "(C) It consists in whole or in part of a diseased, contaminated, filthy, putrid, or decomposed substance, or if it is otherwise unfit for food.
{¶ 42} "(D) It has been produced, processed, prepared, packed, or held under unsanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered diseased, unwholesome, or injurious to health.
{¶ 43} "(E) It is the product of a diseased animal or an animal that has died otherwise than by slaughter, or an animal that has been fed upon the uncooked offal from a slaughterhouse.
{¶ 44} "* * *"
{¶ 45} It is undisputed that had Indian Mound pasteurized the eggs, as required by R.C. § 917.10,[1] the salmonella bacteria would have been destroyed.
{¶ 46} The trial court, in its September 27, 2004, Memorandum of Decision and Judgment Entry, held:
{¶ 47} "This Court finds disputed issues of fact surrounding the classification of raw shelled eggs containing salmonella as adulterated food. Further, the Court does not agree with the Plaintiff's conclusionMassey v. Riser Foods, Inc. (unreported) 9th Dist. C.A. NO. 98CA007260. is dispositive of the issue of adulteration.
{¶ 48} "Notwithstanding, these disputed issues, they are immaterial, and Summary Judgment is appropriate under the circumstances before the Court. Assuming, arguendo, the eggs constituted adulterated food, it isundisputed the salmonella outbreak would not have occurred had IndianMound properly prepared the eggs for consumption. (Emphasis added). In the case of Portage Markets Co. v. George (1924), 111 Ohio St. 775, the Supreme Court held, in the second paragraph of the syllabus, as follows: "The violation of the pure food laws of this state by the sale of unwholesome meat is negligence per se, and may be the basis of recovery for damages by the user of said unwholesome meat, who suffers injury proximately resulting therefrom, provided the user is not himself guilty of negligence in the care, preparation, cooking, or in any other manner which contributes directly to his injury."
{¶ 49} "This Court finds the undisputed facts in the present action can only lead to the conclusion that Indian Mound, the user of the allegedly adulterated food, was negligent in the care, preparation, and cooking of the eggs which directly contributed to the salmonella outbreak and financial injury to Plaintiffs. Therefore, pursuant to the holding inPortage Markets, the Plaintiffs are precluded from recovery."
{¶ 50} Upon review, we find that the failure of Indian Mound to pasteurize the eggs was the proximate cause of Appellant's injuries and/or damages. We therefore find that the trial court did not err in granting summary judgment in favor of Appellees.
{¶ 51} Appellant's sole assignment of error is overruled.
{¶ 52} The decision of the Licking County Court of Common Pleas is affirmed.
Boggins, P.J. Hoffman, J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking, Ohio, is affirmed. Costs assessed to Appellant.
[1] 917.10 Frozen desserts
(A) A person who manufactures frozen desserts for sale shall use in the manufacturing only mixtures in which the dairy products, eggs, and any other ingredient specified by the director of agriculture have been pasteurized in accordance with rules governing pasteurization adopted under section 917.02 of the Revised Code. Except as provided in division (B) of this section, pasteurization shall occur at the milk plant where retail packaging occurs. Repasteurization is not required at a retail establishment.